Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4904 | **DATE** | 10/2/2003 |
| **CASE TITLE** | Bublich vs. The Mead Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted and the case is terminated. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | 22 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/2/2003 | |
| MPJ | courtroom deputy's initials | 03 OCT -2 PM 5:11 Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LENNETTE BUBLICH, )
)
Plaintiff, )
)
v. ) No. 02 C 4904
)
THE MEAD CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

I.

In 1983, plaintiff Lennette Bublich, a white female, began working as a general laborer for defendant Mead Corporation ("Mead"), a manufacturer of paper cartons used to hold beverage cans. In 1990, after a series of promotions, Ms. Bublich became Ink Blender Group Leader at Mead. In this position, Ms. Bublich was responsible for mixing the ink used to print the cartons and overseeing the work of two colleagues in the ink-blending department. During Ms. Bublich's tenure as Ink Blender Group Leader, two computers were installed in the Ink Blender Office. One was a Mead computer, connected to the company network and used to communicate with others in the company. The other, according to Ms. Bublich, was owned by Progressive Ink ("Progressive"), a Mead supplier, and controlled by Shawn Sheel, Progressive's on-site representative. The ink blending staff used this computer to blend ink according to customer specifications. According to Ms. Bublich,

Mr. Sheel permitted Ms. Bublich to install American Online ("AOL") software on the ink blending computer and check her e-mail and perform other personal business there. Ms. Bublich maintains that her supervisor, Jim Bell, gave her permission to use the Mead computer in the office to create documents for her own use, and that she created such documents after working hours and on scheduled breaks.

On November 26, 2000, Dawn Harrison, a white female and one of Ms. Bublich's supervisees in the Ink Blender Office, reported to higher-ups at Mead that pornographic materials had been downloaded onto the hard drive of the ink blending computer in the office. When plant manager Brian Porrett, a white male, heard this report, he met with all three ink blending employees to inquire about improper computer use, and Ms. Bublich acknowledged using the computer for personal reasons. Mr. Porrett informed her that Mead would investigate this use. He instructed Mike Hembrough, a white male, the plant's Quality and Safety Manager, to examine the hard drive of the ink blending computer. Mr. Hembrough's examination revealed extensive recent use of the web browser, including the access of job-search sites, as well as some potentially offensive cartoons and numerous documents on the hard drive related to Ms. Bublich's employment at a local restaurant.

On November 28, 2000, Ms. Harrison filed a report with Mead claiming that Ms. Bublich had threatened her, in apparent

2

retaliation for Ms. Harrison's earlier complaint about the pornography on the computer. In response, Mr. Porrett suspended Ms. Bublich pending investigation of the alleged threat. After reviewing the information found by Mr. Hembrough on the ink blending computer, Mr. Porett concluded that Ms. Bublich had been using the computer in an unauthorized manner on company time. In consultation with the Mead Corporate Director of Human Resources, Carolyn Anderson, a white female, Mr. Porrett decided to terminate Ms. Bublich, and arranged for a termination letter to be sent to her over the signature of Jim Dalton, her manager. On December 11, the termination letter was forwarded to Ms. Bublich.

On July 11, 2002, Ms. Bublich filed the present action for damages and equitable relief, accusing Mead of discriminating against her because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. Mead moves for summary judgment in its favor. I grant the motion.

## II.

On a motion for summary judgment, I evaluate the admissible evidence in the light most favorable to the non-moving party in order to determine whether the evidence presents a genuine issue of material fact. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

As the same standard applies to charges of both race and sex discrimination under Title VII, I will analyze both allegations

together. There are two methods by which a plaintiff may prove intentional discrimination by an employer under Title VII. She may rely on direct evidence, or in the alternative, she may rely on the burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). Under the *McDonnell Douglas* framework, Ms. Bublich must first establish a *prima facie* case of discrimination, which creates a rebuttable presumption of unlawful discrimination. Ms. Bublich must prove, first, that she was within a protected class; second, that her performance met Mead's legitimate expectations; third, that she suffered an adverse employment action; and finally, that Mead treated similarly situated persons not in the protected class more favorably. *Cheek*, 97 F.3d at 204. If Ms. Bublich satisfies her *prima facie* burden, Mead must articulate a legitimate, non-discriminatory reason for its termination decision. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Bublich must then "present sufficient evidence that would enable a trier of fact to find that the explanation is pretextual." *Id.*

Ms. Bublich argues first that she has direct evidence that she was fired because of her race. She alleges that on November 26 or 27, 2000, she overheard Jennelle Mason, a black female and the Human Resource Manager of the Mead plant, say to another black employee, "I'm going to have her [Bublich's] white ass." However,

4

in order to constitute direct evidence of discrimination, "a statement must relate to the motivation of the decisionmaker responsible for the contested decision." *Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997). Mr. Porrett, manager of the plant, claims that he made the decision to suspend and terminate Ms. Bublich himself, and did not even consult with Ms. Mason on the subject. Ms. Bublich counters by pointing out that Ms. Mason was present at the meetings between Ms. Bublich and Mr. Porrett concerning computer use and that Ms. Mason was the author of the memo informing Ms. Bublich of her suspension. However, those observations are consistent with Mr. Porrett's assertion that he alone made the decisions to suspend and fire Ms. Bublich. As nothing in the record contradicts Mr. Porrett's sworn statements, the direct evidence of racial discrimination provided by Ms. Bublich is insufficient to create an issue of fact.

Ms. Bublich's attempt to prove discrimination via indirect evidence is equally unsuccessful. Mead concedes that Ms. Bublich is a member of a protected class in terms of her gender and, apparently, her race. It likewise concedes that she suffered an adverse employment action in her termination. Thus, the outcome of the *McDonnell Douglas* analysis will turn on the questions of whether Ms. Bublich met Mead's legitimate expectations and whether it treated similarly situated persons who were not white females more favorably.

5

Ms. Bublich cannot establish that she met Mead's legitimate expectations. Ms. Bublich admitted in her deposition that "at various times during the day," she would sit at the ink blending computer and conduct personal business. (Bublich Tr. 95:9-13.) It is undisputed that Ms. Harrison complained to Mead that Ms. Bublich threatened her. Ms. Bublich attributes Ms. Harrison's complaint to a personal dispute between the two women. However, Ms. Harrison's motivations are irrelevant to the fact that Mead received a complaint that Ms. Bublich threatened a co-worker.

Furthermore, in her statement of material facts that require denial of summary judgment, Ms. Bublich has failed to identify any similarly situated nonwhite or male Mead employees who were treated more favorably than she. Instead, she argues that she need not make such a showing, but must only show that she was constructively replaced by workers outside the protected class. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). This she fails to do. The only support she provides for her assertion that the tasks she performed are now performed by men is a citation to the deposition transcript of her supervisor Mr. Bell. Nowhere in the cited pages does Mr. Bell suggest that Ms. Bublich's former work is now performed by men. A court need not "scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies." *Bombard v. Fort Wayne Newspapers,*

6

92 F.3d 560, 562 (7th Cir. 1996). As Ms. Bublich has not identified any admissible evidence showing that she was constructively replaced by men, she has not met the standard outlined in *Bellaver* and fails to satisfy the fourth prong of the *McDonnell Douglas* test.

### III.

Even if we assume that Ms. Bublich can meet *the McDonnell Douglas* standard and shift the burden to Mead to show a non-discriminatory reason for her dismissal, she cannot escape summary judgment. The burden is immediately shifted back by Mead's evidence that she was fired for conducting personal business at work and for threatening a co-worker. Ms. Bublich cannot show that this reason is pretextual. Her arguments that she was given permission to use the computer for personal business, that she used it only outside of working hours, and that Ms. Harrison fabricated the threat as part of a personal vendetta against Ms. Bublich are not relevant, because her "employer only needs to supply an honest reason, not necessarily a reasonable one." *Flores v. Preferred Technical Group*, 182 F.3d 512, 516 (7th Cir. 1999). Mead has provided voluminous support for the notion that Mr. Porrett honestly believed that Ms. Bublich had violated company policies at the time he fired her, and Ms. Bublich offers nothing to contradict that evidence. Ms. Bublich's "naked argument that [the defendants'] explanation was a mere pretext for discrimination does not raise a triable issue of

fact." *Id.* at 517. *See Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (Arguing about the plaintiff's actual performance as an employee is a distraction "because the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*.")

Ms. Bublich has failed to establish a genuine issue of material fact by any of the methods discussed above. The defendant's motion for summary judgment is GRANTED.

ENTER ORDER

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: October 2, 2003